# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| USAA FEDERAL SAVINGS BANK, | ) |
| Appellant, | ) |
| v. | ) CIVIL ACTION NO. 5:17-CV-352 (MTT) |
| CAMILLE HOPE, CHAPTER 13 TRUSTEE, | ) |
| Appellee. | ) |

## ORDER

In this appeal from the United States Bankruptcy Court for the Middle District of Georgia, USAA Federal Savings Bank contends the Bankruptcy Court, Judge Austin E. Carter presiding, erroneously granted summary judgment to the Trustee[1] in an adversary proceeding to avoid a transfer, specifically a security deed, in favor of Appellant USAA Federal Savings Bank. For the following reasons, the Bankruptcy Court's decision is **AFFIRMED**.

## I. STANDARD OF REVIEW[2]

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). In reviewing the decision of a bankruptcy court, a district court functions as an appellate

---

[1] At the time of the Bankruptcy Court's order, Walter W. Kelley was the Chapter 7 Trustee. Doc. 4-1 at 152. The bankruptcy petition has now been converted into a Chapter 13 petition with Camille Hope as Chapter 13 Trustee. But this does not affect the Trustee's standing to pursue this adversary proceeding. *Cf. Matter of Ware*, 99 B.R. 103, 105 (Bankr. M.D. Fla. 1989) ("[T]he Chapter 13 debtor may exercise the avoiding powers of the trustee enumerated in Section 547.").

[2] From the briefs, the parties apparently think that the clearly erroneous standard of review applies to at least some of the Bankruptcy Court's findings. However, in *In re Optical Techs., Inc.*, the Eleventh Circuit "ma[de] clear that both the district court and [the Eleventh Circuit] review a bankruptcy court's entry of summary judgment de novo." 246 F.3d 1332, 1335 (11th Cir. 2001).

court. *Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). Here, the Bankruptcy Court made no findings of fact, nor could it on a summary judgment motion, and the Bankruptcy Court's grant of summary judgment, including its interpretation and application of the Bankruptcy Code, is reviewed de novo. *See In re Optical Technologies, Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir. 1990). This Court, therefore, owes no deference to the Bankruptcy Court's interpretation of the law or its application of the law to the facts. *Goerg v. Parungao (In re Goerg)*, 930 F.2d 1563, 1566 (11th Cir. 1991).

A movant is entitled to summary judgment upon showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] When the movant bears the burden of proof at trial, it must show there is no genuine dispute that it has met the elements of the claim or defense. See *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991). The non-movant may defeat a properly supported motion by producing "significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)). In other words, by proving that there is indeed a genuine dispute regarding a material fact. *See id.*

"A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quotation marks omitted). Therefore, when deciding if summary

---

[3] Rule 56 is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. Rules 5056 and 9014.

judgment is appropriate, the court must not "weigh the evidence and determine the truth of the matter" on its own but should determine only whether a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249. 255 (1986) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). In doing so, the court should draw all justifiable inferences, and resolve any reasonable doubts concerning the facts, in favor of the non-movant. *Id.* at 255; *Info. Sys. & Networks Corp.*, 281 F.3d at 1224. If, after reviewing the entirety of the record in the light most favorable to the [non-movant], the court determines a reasonable jury could not find in favor of the non-movant, then summary judgment is appropriate. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("[T]he District Court [must] consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)); *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.

## II. FACTUAL BACKGROUND

The undisputed facts are as follows. In 2016, Robert and Alice Brashear refinanced their mortgage on their residence and 7.75 acres of adjoining property located at 84 Brown Hill Road, Elko, Georgia. Doc. 4-1 at 153. Specifically, on August 26, 2016, USAA agreed to loan $264,964 to the Brashears and to pay off the Brashears' existing mortgagee, CB&T, which held its own security deed to the property. *Id.* at 106, 153. In exchange, the Brashears executed a Security Instrument, granting USAA a

security deed to their property. *Id.* at 153. USAA paid $250,005.73 to CB&T on August 31, 2016. *Id.* For reasons not explained, however, CB&T did not cancel its security deed until October 6, 2016. *Id.* For reasons also not explained, USAA did not file its security deed until October 17, 2016, 52 days after the execution of the Security Instrument. *Id.* On January 13, 2017, 88 days after the security deed was filed, the Brashears filed their Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Georgia. *Id.*

## III. PROCEDURAL BACKGROUND

After the Brashears filed their bankruptcy petition, the Trustee filed this adversary proceeding pursuant to 11 U.S.C. § 547(b) to avoid the transfer of the security deed to USAA. *Id.* The Trustee argued that, under the Bankruptcy Code, the transfer was deemed to have occurred on October 17, 2016, when the security deed was filed, and, thus, the transfer occurred within 90 days of the Brashears filing a bankruptcy petition, making it an avoidable preference under § 547(b). *Id.* USAA did not then dispute, and never disputed before the Bankruptcy Court, that the transfer occurred on October 17, 2016.[4] After the Trustee moved for summary judgment, arguing there was no genuine issue of fact regarding the Trustee's right to avoid the transfer, USAA raised the affirmative defense that the transfer was a substantially contemporaneous exchange under 11 U.S.C. § 547(c)(1) and thus was not an avoidable transfer. *Id.* at 2-3. The Bankruptcy Court found, first, that there was no genuine issue that the Trustee had met

---

[4] USAA argues that it did raise an argument about the date of the transfer as a part of its equitable subrogation argument before the Bankruptcy Court. Doc. 4 at 13 n.1. The Bankruptcy Court easily rejected that equitable subrogation argument, and USAA does not raise it here. This Court fails to see how that argument preserved the argument that the transfer, according to § 547(e)(2), did not occur on October 17, 2016.

-4-

its burden under § 547(b) and that that there was no genuine dispute that the transfer was not a substantially contemporaneous exchange under § 547(c)(1). *Id.* at 6, 11. Accordingly, the Bankruptcy Court granted summary judgment to the Trustee. *Id.* at 11. USAA then filed this appeal, which is fully briefed and for which the Court has heard oral argument. Docs. 1; 4; 10; 13; 14; 15.

## IV. DISCUSSION

On appeal, USAA presents two challenges to the Bankruptcy Court's grant of summary judgment. First, USAA argues, for the first time, that the transfer did not occur when USAA filed its security deed on October 17, 2016. Doc. 4 at 12. Second, USAA argues, as it did before the Bankruptcy Court, that the transfer was a substantially contemporaneous exchange under § 547(c)(1). *Id.*

### A. Whether the Undisputed Facts Establish the Trustee Met the Elements of § 547(b)

USAA argues the Bankruptcy Court erred in finding the Trustee met its burden to establish the security deed was an avoidable preference under § 547(b). Specifically, USAA argues the transfer did not occur within the 90-day preference period.[5]

---

[5] Understandably, the Trustee argues USAA waived this argument by not raising it before the Bankruptcy Court. Doc. 10 at 11. Even more, USAA admitted the transfer was deemed to have occurred on October 17, 2016 under § 547(e)(2) and thus was within the 90-day preference period. Doc. 4-1 at 90 & n.2 (USAA's response to Trustee's summary judgment motion).
 In addition to the suspect argument that its equitable subrogation argument somehow trumped its admission, USAA argues that, even if it had not raised the issue in the Bankruptcy Court, the Court must consider this argument because it is a pure question of law and failure to consider the argument would result in a miscarriage of justice. Doc. 13 at 5-6 (citing *Access Now, Inc. v. SW. Airlines Co.*, 365 F.3d 1324, 1332 (11th Cir. 2004); *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 n.8 (11th Cir. 2001). Regarding its admission of the transfer date, USAA argues that the date of a transfer, under bankruptcy law, is a legal conclusion that cannot be admitted. *Id.* at 7-8.
 Those arguments are not convincing. Nevertheless, the Court will address the argument that the transfer did not occur on October 17.

Under 11 U.S.C. § 547(b), the trustee may avoid a transfer of an interest by the debtor if the trustee establishes that the transfer was:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b). Critical to this action, 11 U.S.C. § 547(e)(2) provides that a transfer occurs "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected . . . within 30 days after" the transfer. But if the transfer is not perfected within 30 days, the transfer is deemed to have occurred "at the time such transfer is perfected." *Id.* The Bankruptcy Court ruled that the undisputed facts established that the transfer occurred on October 17, 2016, when USAA filed the security deed. Because that was within 90 days of the January 13, 2017 filing of the Brashears' bankruptcy petition, the Bankruptcy Court concluded that the transfer was an avoidable preference.

The Court agrees. The Security Instrument granting USAA an interest in the Brashears' property was executed on August 26, 2016. Doc. 4-1 at 36. Because USAA did not file the security deed until October 17, 2016, which is well beyond the 30-day period following the transfer, the transfer occurred on that date.[6] Because the security deed was filed within 90 days of the filing of the Brashears' petition, the transfer was an avoidable preference.

USAA now argues the transfer occurred on October 6, 2017, when CB&T cancelled its security deed, rather than on October 17, when USAA filed its security deed. Doc. 15 at 7:2-7. According to USAA, the intent of the transfer was for the Brashears to convey the "full bucket of rights" in the property to USAA and to "convey a first priority lien against the property."[7] *Id.* at 6:6-10, 8:5-8. But under Georgia law, USAA argues, CB&T held legal title to the property through its security deed, and the Brashears retained a "a mere equity of redemption and right of possession of the realty until the secured debt [was] satisfied in full." *Patel v. J.P. Morgan Chase Bank, N.A.*, 327 Ga. App. 321, 323, 757 S.E.2d 460, 462 (2014) (quotation marks and citations omitted). Therefore, USAA argues the Brashears could not fulfill the intent of the parties, by transferring the "full bucket of rights," until their debt to CB&T was paid and CB&T cancelled its security deed. Doc. 15 at 6:6-10 ("Our position would be that—the

---

[6] For purposes of preference avoidance actions, state law determines when a security interest is perfected. *Hedrick v. Novastar Mortg., Inc. (In re Hedrick)*, 524 F.3d 1175, 1181 (11th Cir. 2008). It is undisputed that, under Georgia law, USAA's security interest was perfected when the security deed was filed and not before. O.C.G.A. §§ 44-2-1, 3.

[7] In its brief, USAA argued that the Brashears had *no* rights in the property because of CB&T's security deed. Doc. 4 at 12 ("Under Georgia law, the Debtors did not acquire rights in the property until CB&T cancelled its security deed."). At oral argument, USAA backed off that specious argument. Doc. 15 at 5:15-16:10. USAA now appropriately admits that the Brashears had some rights in the property that could be transferred even if they did not have "the full bucket of rights." *Id.*

intention of the parties . . . could not occur under Georgia law until both the CB&T debt had been paid in full and the CB&T security deed was canceled of record.")[8]; *see also* O.C.G.A. § 44-14-67(a) ("In all cases where property is conveyed to secure a debt, the surrender and cancellation of the deed, in the same manner as mortgages are canceled, on payment of the debt to any person legally authorized to receive the same, shall operate to reconvey the title of the property to the grantor or the grantor's heirs, executors, administrators, or assigns."). CB&T did not cancel its security deed until October 6, 2017. So, USAA argues the transfer did not become effective until that date—when the parties' intent could finally be carried out. And because USAA filed its security deed 11 days later on October 17, 2016, USAA argues under § 547(e)(2) the transfer is deemed to have occurred on October 6, 2017, which is beyond the 90-day preference period and makes the transfer not an avoidable preference.

This argument, based as it is on the intention of the parties, is essentially a contract-interpretation argument.[9] The Court must inquire whether the agreement between the parties, the Security Instrument, which documented the transfer of the security deed to USAA, reflected this intention—that it would not be effective until CB&T

---

[8] The Court points out that, even accepting USAA's strained interpretation of the Security Instrument and its argument that the transfer did not become effective until the Brashears could transfer the "full bucket of rights," it could be argued the transfer became effective, and the intention of the parties was carried out, when USAA extinguished the Brashears' debt on August 31, 2016. *See Coleman Road Ass., Ltd. v. Culpepper*, 214 Ga. App. 475, 475, 448 S.E.2d 83, 84 (1994) ("A security deed, although conveying the legal title, does so for the purpose of security only, and, upon the satisfaction of the obligation which it is given to secure, *is automatically extinguished in effect* and can be canceled of record without any reconveyance by the grantee in accordance with the provisions of [OCGA § 44–14–67]." (emphasis added) (quoting *Sapp v. ABC Credit, etc., Co.*, 243 Ga. 151, 154, 253 S.E.2d 82 (1979))). The Trustee does not make this argument and the Court need not address it because the Security Instrument does not support USAA's interpretation.

[9] "Traditional contract-interpretation principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Faez v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1105 (11th Cir. 2014).

-8-

cancelled its security interest.  Under Georgia law, a court must first look to the four corners of the document.[10]  *Equifax, Inc. v. 1600 Peachtree, L.L.C.*, 268 Ga. App. 186, 191, 601 S.E.2d 519, 523 (2004).  And absent ambiguity, those terms are controlling. *Id*.  Ambiguity is defined as:

> [D]uplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and [it] also signifies . . . doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations.

*Holcim, Inc. v. ABDG, Inc.*, 265 Ga. App. 818, 596 S.E.2d 197, 200 (2004), citing *Early v. Kent*, 215 Ga. 49, 50, 108 S.E.2d 708 (1959).

Here, there are no ambiguities in the Security Instrument.  The agreement clearly states that it

> secures to [USAA]: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, [the Brashears] [do] hereby grant and convey to MERS[11] (solely as the nominee for [USAA] and [USAA]'s successors and assigns) and all of the successors and assigns of MERS, with power of sale, the following described property . . . which currently has the address of 84 BROWN HILLL RD ELKO, Georgia 31025.

Doc. 4-1 at 66.  Nothing in the contract states that the transfer of rights was contingent on any actions between USAA and a third party, which is what would be required to support USAA's argument—the contract would have to be contingent on a third party's interest being extinguished.  While the Security Instrument recognized that existing third-party interests in the property with priority over USAA's interest would be

---

[10] The Security Instrument states that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located."  Doc. 4-1 at 73.

[11] MERS refers to Mortgage Electronic Registration Systems, Inc.  Doc. 4-1 at 65.  MERS acted as the nominee for USAA and is the grantee under the Security Instrument.  *Id*.  For clarity, in this Order, the Court refers to the transfer as between USAA and the Brashears.

-9-

extinguished, such as CB&T's security deed, the Security Instrument was in no way contingent upon that happening. Indeed, the point of any refinancing agreement, including this one, is to allow the new lender to take its own security interest and, having gained that security, the new lender can then pay the existing debt. Far from advancing the parties' intent, the argument that debtors have not immediately conveyed any interest to secure debt completely undercuts a new lender's intent in a refinancing agreement—if the new lender is not gaining any interest in the property, it would not advance money to pay the existing debt. In short, the idea that these parties or any parties to a financing agreement do not intend to convey any interest in the secured property until the existing security interest has been cancelled has no basis in law or fact.

Moreover, as USAA admitted at oral argument, the Brashears did have some interest in the property when the Security Instrument was executed, and, based on the clear wording of the Security Instrument, it was effective when signed and thus transferred whatever interest the Brashears had to USAA on August 26, 2018. And because USAA did not perfect its security interest until October 17, 2016, the Bankruptcy Court was correct in finding that USAA perfected that interest more than 30 days after the transfer became effective, meaning the transfer occurred on the date of perfection under § 547(e)(2)(B).

Accordingly, the Court affirms the Bankruptcy Court's determination that there is no genuine dispute that the transfer occurred on October 17, 2016, within the 90-day preference period, and thus that there was no genuine dispute that the Trustee met its burden under § 547(b).

### B. Substantially Contemporaneous Exchange

In response to the Trustee's summary judgment motion, USAA argued that the transfer between it and the Brashears was intended to be a substantially contemporaneous exchange and thus not avoidable under § 547(b). The Bankruptcy Court, however, found that there was no genuine dispute that the transfer was not in fact a substantially contemporaneous exchange.

Generally, if a trustee has established that a transfer meets the requirements of § 547(b), that transfer may be avoided. But § 547(c)(1) provides an exception to that general rule. *Hedrick v. Novastar Mortgage, Inc. (In re Hedrick)*, 524 F.3d 1175, 1188 (11th Cir.), *amended on reh'g in part*, 529 F.3d 1026 (11th Cir. 2008). Essentially, § 547(c)(1), or the "substantially-contemporaneous-exchange exception," grants creditors an affirmative defense to prevent a transfer that was intended to be a contemporaneous exchange for new value from being avoided by the trustee. *Official Unsecured Creditors' Comm. V. Airport Aviation Servs. Inc. (In re Arrow Air, Inc.)*, 940 F.2d 1463, 1465-66 (11th Cir. 1991); *see also Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Systems, Inc.)*, 861 F.2d 1555, 1558 (11th Cir.1988). To avail itself of this exception, a creditor holds the burden to establish that the transfer was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor" and that it was "in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1)(A), (B); *In re Arrow Air, Inc.*, 940 F.2d at 1465-66; *In re Jet Florida Systems, Inc.*, 861 F.2d at 1558.

Here, the Trustee has established that there is no genuine dispute that the elements of § 547(b) have been met. Thus, the Trustee is entitled to summary

judgment unless, in response, USAA has produced "significant, probative evidence demonstrating the existence of a triable issue of fact" concerning whether it can meet the elements of the substantially contemporaneous exchange exception. *See Four Parcels Real Prop.*, 941 F.2d at 1438. It is undisputed that the transfer was intended to be substantially contemporaneous.[12] However, USAA has not presented evidence from which the Court could find the transfer was in fact substantially contemporaneous and thus has not adduced sufficient evidence to prove a triable issue of fact regarding whether the transfer meets the exception.

When considering whether the transfer was in fact substantially contemporaneous, "courts should take into account the objective reasonableness of the time taken to perfect the interest, the cause of any delay, and the motivations for it." *Hedrick v. Novastar Mortgage, Inc., (In re Hedrick)*, 524 F.3d 1175, 1190 (11th Cir. 2008), *amended on reh'g in part on other grounds*, 529 F.3d 1026 (11th Cir. 2008). Courts should consider the "length of the delay between the transfer and perfection," "the nature of the transaction and how long a creditor in that type of transaction usually takes to perfect its interest in the normal course of affairs." *Id.* In *In re Hendrick*, the Eleventh Circuit stated "[t]he most important fact may be whether the delay in perfecting the interest was intended by the creditor or resulted from its negligence." *Id.* at 1191. And to meet its burden under 547(c)(1), a creditor must adduce evidence both that the delay was not intentional and that the cause was not negligence. *See In re Hedrick*,

---

[12] In its reply to USAA's summary judgment response, the Trustee stated, concerning USAA's § 547(c)(1) argument, that "the only issue to be decided in this case is whether the 52-day delay is *in fact a substantially contemporaneous exchange* within the meaning of [§] 547(c)(1)(b)." Doc. 4-1 at 144-145 (quotation marks omitted). And the Bankruptcy Court "assum[ed] that [USAA] ha[d] met its burden with regard to element one." Doc. 4-1 at 158.

524 F.3d at 1190-91 (citing *Arnett v. Sec. Mutual Fin. Corp. (In re Arnett)*, 731 F.2d 358,360 (6th Cir. 1984) ("Thus, where delayed perfection of a security interest may be satisfactorily explained, and *in the absence of dilatoriness or negligence on the part of a transferee*, the transfer may still be found 'substantially contemporaneous' with the exchange of new value to the debtor, regardless of the lapse of time." (emphasis added))); *see also Dye v. Rivera (In re Marino)*, 193 B.R. 907, 916 (9th Cir. B.A.P. 1996) ("[T]hat Rivera was neither dilatory nor negligent in his actions is significant.").

In short, there must be some evidence of the cause of the delay.

USAA has proffered testimony from A.J. Loll, the custodian of records for USAA's servicer, Nationstar Mortgage LLC, who stated "the delay in perfecting the security interest was not intended by USAA and was not improperly motivated."[13] Doc. 4-1 at 98. But that is all USAA did. USAA has offered no evidence of the reason for the 52-

---

[13] Loll claimed to have read USAA's response to the motion for summary judgment and to have "personal knowledge of the procedures utilized by Nationstar in making, receiving, and maintaining records in the regular course of Nationstar's business." Doc. 4-1 at 96. But Loll, whose name and title were stamped into blanks on his affidavit, did not claim to have personal knowledge of the refinancing of the Brashears' property. *See id.* at 96-98. Given that Loll claims only to be a records custodian, he does not appear to have sufficient knowledge to support his testimony that the "delay in perfecting the security interest was not intended by USAA and was not improperly motivated." *Id.* at 98. Indeed, at oral argument, USAA agreed with the Court's statement that the "fill-in-the-blank affiant . . . culled some information from the documents, but other than that, the affidavit doesn't tell us anything about the cause of the delay." Doc. 15 at 12:10-19.

But even so, viewed in the light most favorable to USAA, the Court agrees with the Bankruptcy Court that Loll's affidavit is evidence that the delay was not improperly motivated or intentional. The Bankruptcy Court, based on this evidence, found that USAA had established the delay was not improperly motivated or intentional. Relying on *Hedrick*, USAA argues that the Bankruptcy Court gave too little weight to this determination because, according to USAA, whether the delay was intentional is the "most important fact" in the analysis. Doc. 4 at 17. However, as the Bankruptcy Court pointed out, USAA's interpretation of *Hedrick* is too narrow. Doc. 4-1 at 161-62. *Hedrick* actually states "the most important fact *may* be whether the delay in perfecting the interest was intended by the creditor *or resulted from its negligence.*" 524 F.3d at 1190-91 (emphasis added). Contrary to USAA's interpretation, *Hedrick* states only that these facts *may* be the "most important" depending on the circumstances but does not demand it be given greater weight than other factors. *Id.* Moreover, *Hedrick* gives equal weight to whether the delay resulted from the creditor's negligence. *Id.*

day delay in perfection.[14]  Moreover, regarding the other relevant factors, USAA has adduced no evidence from which the Court could find the delay was objectively reasonable.  And at oral argument, USAA agreed that "it was not the usual practice of lenders to wait for the cancellation of the security deed" and that lenders typically "want their security interest protected as soon as it can be protected."  Doc. 15 at 7:12-22.

From this evidence, the Court cannot conclude that USAA has produced "significant, probative evidence demonstrating the existence of a triable issue of fact" as to whether it can establish the transfer was a substantially contemporaneous exchange under § 547(c)(1).  *See Four Parcels of Real Prop.*, 942 F.2d at 1438.  Therefore, because the Trustee has established there is no genuine dispute that the elements of § 547(b) have been met and USAA has not established a genuine dispute regarding whether the transfer meets the § 547(c)(1) exception, the Trustee is entitled to judgment as a matter of law.

## V. CONCLUSION

For the reasons stated herein, the Court **AFFIRMS** the Bankruptcy Court's grant of summary judgment in favor of the Trustee.

**SO ORDERED,** this 6th day of July, 2018.

S/ Marc T. Treadwell  
MARC T. TREADWELL  
UNITED STATES DISTRICT COURT

---

[14] USAA has alluded, without supporting evidence, that the delay in perfection was based on CB&T's delay in cancelling its security deed.  But USAA has offered no explanation, much less evidence, of how CB&T's delay in cancelling its security deed prevented USAA from perfecting its security interest.